UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Peter Macdonald

    v.                          Civil No. 18-cv-1100-JL

                                        Opinion No. 2019 DNH 056

Strafford County Sup. Court
Tina L. Nadeau
Mark E. Howard
Town of Lee, NH

**MEMORANDUM ORDER**

In this zoning case, plaintiff Peter Macdonald seeks to overturn decisions rendered in the Strafford County Superior Court. He alleges that members of the Court conspired with the Town of Lee to oppress his religious organization and seeks relief under the Constitution and anti-discrimination statutes, as well as substantial damages. Even setting aside serious standing concerns, Macdonald's claims against the individual judges and the Superior Court are barred by judicial immunity, the Rooker-Feldman doctrine, and the Eleventh Amendment. His claims against the Town of Lee must be dismissed by a combination of the Rooker-Feldman and res judicata doctrines and for failure to allege sufficient facts to state a claim.

## I. **Applicable legal standard**

Defendants may move to dismiss a case for several reasons, including lack of subject-matter jurisdiction, Fed. R. Civ.

P. 12(b)(1), and failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

In assessing whether a plaintiff has alleged sufficient facts to show jurisdiction or state a claim, the court must "take the complaint's well-pleaded facts as true," and "draw all reasonable inferences in the plaintiff' favor."  Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018) (Rule 12(b)(6) motion); see Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (Rule 12(b)(1) sufficiency challenge).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

But "[w]ell-pleaded facts must be 'non-conclusory' and 'non-speculative.'"  Barchock, 886 F.3d at 48.  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Id.

Documents outside of the pleadings are generally not considered in ruling on a motion to dismiss.  Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018).  But the court may consider documents attached to or explicitly incorporated in the complaint, and "narrow exceptions [exist] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs'

claim; or for documents sufficiently referred to in the complaint." Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). The parties' filings and Superior Court's orders attached to the Town of Lee's motion to dismiss fall within these exceptions, and Macdonald has not objected to their inclusion, so the court will consider them.

## II. **Background**

### A. **Veteran Resort-Chapel**

Macdonald is a United States Marine Corps veteran. He is the leader of the Veteran Resort-Chapel ("VRC"), a nonprofit corporation registered in New Hampshire.[1] He alleges that the VRC is a church begun in 1980.[2] In 2013, Macdonald and his wife Agnes S. Macdonald conveyed to VRC a property at 101 Stepping Stones Road in Lee, New Hampshire.[3] The deed provided that the property would revert to the Macdonalds or their heirs,

---

[1] The New Hampshire Department of State's directory indicates that VRC was registered in 2012. Between 2014 and 2015, it operated as "Veterans Village NH" before reverting to the name VRC. In September of 2018, VRC amended its name to "Veterans Church of God." See NH Dep't of State QuickStart, https://quickstart.sos.nh.gov/. The parties have briefed the motions to dismiss using the name VRC; the court does likewise.

[2] Compl. (doc. no. 1) ¶ 1.

[3] Warranty Deed, attached to Compl. (doc. no. 1) at 7-9. The briefing and documents provided to the court contain varied spellings of "Stepping Stones Road," but none of the differences are material or relevant.

successors, or assigns if VRC were ever dissolved and not revived within 6 months or if land ceased to be used as either "a place for veterans of the United States Armed forces to live free of charge; or as a place for veterans of the United States Armed Forces to express and practice their religious beliefs."[4] Macdonald and VRC's efforts to use the property as a haven for homeless veterans have led to numerous disputes with the Town of Lee, including zoning and permitting issues. See, e.g., Veterans Village of New Hampshire v. Town of Lee, 14-cv-279-SM (D.N.H. filed June 24, 2014) (concerning property-tax exemption); Veterans Village of NH v. Lee Zoning Board of Adjustment, 13-cv-356-JL (D.N.H. filed Aug. 7, 2013)(concerning septic-system requirements and compost toilets).

**B.    2015 settlement agreement**

In 2014, the Town of Lee sued Macdonald and VRC in Strafford County Superior Court, seeking to enforce the town's zoning ordinance against various violations related to VRC allowing a person to live in a camper on the property.[5]  In early 2015, the Superior Court issued a judgment and stipulation

---

[4] Id. at 9.

[5] This case was docketed as #219-2014-CV-00220.

document in the case, signed by the Town of Lee and Macdonald, for both himself and VRC.[6]

Under the judgment, Macdonald and VRC were to pay the town $10,000 by February 1, 2016.[7]  They also agreed not to build any structure without a building permit or violate any zoning ordinance of the town.[8]  The judgment specifically enjoined Macdonald and the VRC from erecting signage on the property without a permit, permitting permanent or temporary accommodations in any structure on the property without town approval, or permitting the use or storage of any "temporary toilet/out-house/porta-potty" on the property without the express written permission of the town.[9]  If any of these specific violations were discovered and not cured, the judgment provided that the town could file a Motion to Enforce the Settlement Agreement.  If the town prevailed, it would be entitled to statutory fines under N.H. Rev. Stat. Ann. § 676:17,I which, along with attorney's fees, would constitute a post-judgment attachment on the property.[10]  Finally, the

---

[6] Judgment and Stipulation (doc. no. 4-2).

[7] Id. ¶¶ 2-6.

[8] Id. ¶¶ 8, 12.

[9] Id. ¶ 9.

[10] Id. ¶¶ 10-11.

stipulated judgment provided that "[b]y entering into this agreement, [Macdonald and VRC] give up no rights under the zoning ordinance or state or federal law and they reserve their right to present any and all such claims or defenses in court or any other venue."[11]

The town later moved to enforce the settlement agreement based on its claim of an unpermitted sign. It also moved for a writ of execution after Macdonald and VRC failed to pay the $10,000 required by the judgment. The Superior Court granted both motions on March 4, 2016.[12]

### C.    2016 zoning appeal and consolidation

Later in 2016, VRC filed a site review application with the town seeking to build a "single person church" on the property. The town's Planning and Zoning administrator determined that application was not in fact for a church, but was instead for impermissible lodging quarters, and so denied the application. On December 7, 2016, the town's Zoning Board of Adjustment affirmed that decision.[13]

---

[11] Id. ¶ 15.

[12] Superior Ct. Order of Mar. 4, 2016 (doc no. 4-3).

[13] See Superior Ct. Final Order of Nov. 13, 2017 (doc. no. 4-8) at 5.

On December 12, 2016, VRC, represented by Macdonald, appealed the Zoning Board of Adjustment's decision to the Strafford County Superior Court.[14] VRC sought a ruling that VRC is a church, that VRC could build a church on the property in accordance with zoning regulations, and that VRC could build "religious reading rooms AKA solo Churches" on the property. It also sought $1.15 million from the town, "as they agreed by default" in consideration for zoning meetings that VRC attended in support of its application.[15]

Around the same time, the town again moved to enforce the 2015 settlement agreement, alleging that VRC housed individuals on the property in violation of the zoning ordinance and the settlement agreement.[16] The Stafford County Superior Court consolidated this reopening of the settled case with VRC's new zoning appeal. After a hearing on the consolidated cases, the Superior Court dismissed VRC's claims for damages, but allowed post-hearing briefing on the remaining issues.[17]

---

[14] Appeal of ZBA Decision (doc. no. 4-6). This appeal was docketed as 219-2016-CV-455.

[15] Id. at 5.

[16] See Superior Ct. Final Order of Nov. 13, 2017 (doc. no. 4-8) at 3-7.

[17] Superior Ct. Order on Post-Hearing Briefing and the Town's Motion to Dismiss Damage Claim of June 8, 2017 (doc. no. 4-7).

On November 13, 2017, after the briefing, the Superior
Court issued a "Final Order,"[18] finding that VRC had breached the
settlement order by constructing tiny homes without permits and
allowing people to sleep there.[19]  Applying the settlement
agreement and N.H. Rev. Stat. Ann. § 676:17,I, the Court imposed
a penalty of $70,675 as a post-judgment attachment on the
property, and assessed costs and attorney's fees.[20]

The Superior Court also affirmed the Zoning Board of
Adjustment's decision.  It found that, for the purposes of the
town's zoning ordinance, VRC is not a church.  As "church" is
not a defined term in the ordinance, it looked to the common and
approved usage, citing several dictionaries and finding that VRC
lacked the commonly understood hallmarks of a church.[21]  The
Superior Court rejected VRC's arguments that an organization is
a church for zoning purposes if it is registered as a tax-exempt
religious organization with the state and federal government.[22]
Furthermore, the Superior Court affirmed the Zoning Board, in
the alternative, because VRC was bound by the limitations on

---

[18] Superior Ct. Final Order of Nov. 13, 2017 (doc. no. 4-8).

[19] Id. at 6.

[20] Id. at 7.

[21] Id. at 8-10.

[22] Id. at 10.

human occupancy in the settlement agreement.  Even if VRC itself
is a church, the Superior Court reasoned, the proposed
structures were clearly not "churches."[23]

The Superior Court also rejected Macdonald and VRC's
contention that the Zoning Board decision violated the land use
provision of the Religious Land Use and Institutionalized
Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(a).  RLUIPA limits
land use regulations that impose "a substantial burden on the
religious exercise of a person, including a religious assembly
or institution."  Id.  The Superior Court found both that VRC's
effort to construct tiny homes for veterans did not constitute
"religious exercise" and that there was no evidence that
requiring compliance with the town's zoning ordinance imposed a
"substantial burden" within the meaning of RLUIPA.[24]

D.   **Writs and sheriff's sale**

A month later, the town filed an ex parte motion for a
judgment lien against the property in the amount of $93,447.95,
reflecting that statutory fines plus costs and attorney's fees.[25]
The town moved ex parte because Macdonald had told the media

---

[23] Id. at 8 n.2.

[24] Superior Ct. Final Order of Nov. 13, 2017 (doc. no. 4-8) at
10-11.

[25] Verified Ex Parte Motion for Judgment Lien (doc. no. 4-9).

that he was attempting to sell the property, which could frustrate the town's recovery.  The Superior Court granted the motion.  It also approved the amount of attorney's fees and denied various motions to reconsider the final order.[26]

Clerks of the Superior Court issued a writ of attachment and later a writ of execution against the property of Macdonald and VRC.[27]  These writs were "witnessed" by the Chief Justice of the Superior Court.[28]  The Superior Court presiding over the case rejected several attempts by Macdonald and VRC to void these writs and approved the town's request for a sheriff's sale of

---

[26] Superior Ct. Order on Post-Decision Motions of January 20, 2018 (doc. no. 4-10).

[27] Attachments to Compl. (doc. no. 1) at 10-11, 13.

[28] The Chief Justice of the Superior Court's name is printed on the writs as witness.  Writs issued by New Hampshire courts "shall be in the name of the state of New Hampshire, shall be under the seal of the court, shall bear the teste of the chief, first, senior or other justice of the court who is not a party" and be signed by the clerk.  N.H. Rev. Stat. § 509:2; N.H. Const., pt. II, art. 87.  The justice's witness is "in practice a mere matter of form."  Opinion of the Justices, 119 N.H. 325, 326 (1979) (quoting Parsons v. Swett, 32 N.H. 87, 88 (1855)).  These requirements were intended to differentiate state writs from royal writs, not to require a substantive review of the merits underlying the writ by the witnessing justice.  See id. (explaining that by 1855 it was standard practice to print the chief justice's name onto blank writs).

the property.[29]  At the sheriff's sale, Macdonald attempted to
submit a bid.  It was refused.[30]

### E.    Federal complaint

Macdonald filed this suit on November 29, 2018, challenging
several of the Superior Court's actions.[31]  He alleges that the
Chief Justice, the presiding judge, and the town conspired
against him and VRC in various ways.  Macdonald objects to the
determination that VRC is not a church for zoning purposes and
argues that VRC meets all the guidelines provided by the
Internal Revenue Service for determining church status for
federal tax purposes.  He contends that the town has
discriminated against him and VRC in violation of RLUIPA, the
First Amendment, and the Americans with Disabilities Act
("ADA").[32]

Macdonald also alleges that the Chief Justice's involvement
in the case represents a conflict of interest because she is a
resident of the town and knows Macdonald.[33] He alleges that the

---

[29] Superior Ct. Notices of Decision (doc. no. 4-11, 4-12, and 4-13).

[30] Compl. (doc. no. 1) ¶ 6.

[31] Id.  The complaint is dated both November 18, 2018 and December 3, 2018, but was filed on November 29, 2018.

[32] Id. ¶¶ 1-2.

[33] Id. ¶ 3.

Chief Justice and the presiding judge violated various constitutional provisions and the ADA by consolidating the two cases, ruling for the town, and rejecting Macdonald's objections to the writs and sheriff's sale.[34]

For relief, Macdonald requests the recognition of VRC as a church and religious organization, discipline of both state judges, $20 million each from the Strafford County Superior Court and town based upon "default signed" contracts, and other damages.[35]  All defendants have moved to dismiss his complaint.[36]

## III. **Analysis**

The defendants argue that Macdonald's claims must be dismissed because of the Rooker-Feldman and res judicata doctrines, judicial immunity, the Eleventh Amendment, and failure to state a claim upon which relief can be granted.  The Court agrees, but addresses two preliminary issues.  First, Defendants' motions to dismiss are not void even though they misspell Macdonald's name and the name of his organization,

---

[34] Id. ¶¶ 2-9.  Macdonald also argues that he was entitled to a jury trial.  But "[t]he Supreme Court has consistently held that states are not constitutionally required to provide a jury trial in civil cases." Gonzalez-Oyarzun v. Caribbean City Builders, Inc., 798 F.3d 26, 29 (1st Cir. 2015).

[35] Compl. (doc. no. 1) at 6.

[36] Chief Justice Nadeau, Judge Howard, and the Superior Court's Mot. to Dismiss (doc. no. 3); Town of Lee's Mot. to Dismiss (doc. no. 4).

because the errors did not impair Macdonald's notice of the
motions.  Second, Macdonald lacks standing to assert claims that
rely entirely on injuries to VRC, which is not a plaintiff and
cannot be represented <u>pro se</u> by Macdonald.  But because all of
Macdonald's claims must be dismissed for other reasons, the
Court does not further evaluate standing.

### A.   Misspellings

Macdonald argues that the defendants' motions to dismiss
are void because they misspelled his name and the name of VRC.[37]
Macdonald spells his surname with an "a" in "Mac" and a lower-
case first "d."   VRC's full name is Veteran Resort-Chapel, with
no "s" at the end of "Veteran".  Portions of the defendants'
motions and documents from the Superior Court proceedings,
however, refer to "Peter McDonald," "Peter MacDonald," or the
"Veterans Resort-Chapel."[38]  The court understands Macdonald's
frustration with these inaccuracies, but he has not shown that
they have had any material or prejudicial effects.  If "a
document containing a discrepancy or variation in the spelling
of a name still put[s] the party against whom the document is to
be applied on adequate notice of the obligations or consequences

---

[37] <u>See, e.g.</u> Mot. for Summ. J. (doc. no. 9) ¶ 3.

[38] The defendants have apologized for these misspellings.  Mot.
to Stay Pl.'s Mots. For Summ. J. (doc. no. 12) at 2, fn.2.

flowing from it," the inaccuracies do not render the document void.  See Brady v. Mullen, 139 N.H. 67, 71-72 (1994). Macdonald clearly received notice of the motions to dismiss and understood their intended effect, because he responded to them.[39]

**B.  Standing**

The town has raised serious questions about Macdonald's standing to bring several of his claims.  Most of Macdonald's claims involve the rights of VRC and seek relief for VRC, but VRC is not a plaintiff in this case.  In two earlier cases, VRC, represented by Macdonald, filed complaints in state court which the town removed to this court.  On both occasions, this court ultimately dismissed the actions because VRC failed to obtain qualified legal counsel and the law does not allow Macdonald to represent VRC, a non-profit corporation, pro se.  See Veterans Village of NH v. Lee Zoning Board of Adjustment, 13-cv-356-JL (D.N.H. July 22, 2014); Veterans Village of New Hampshire v. Town of Lee, 14-cv-279-SM (D.N.H. September 8, 2014) (McAuliffe, J.).  If VRC were a plaintiff in this action, it would need to be represented by counsel, not by Macdonald.

---

[39] The court does not reach Macdonald's arguments that the writs of attachment and execution were similarly void, for the reasons explained infra Part III.C-D.  But the same logic would likely apply.  Macdonald has not alleged that he or any other relevant party lacked notice because the writs referred to "Peter MacDonald" and the "Veterans Resort-Chapel."

Macdonald cannot sidestep this problem by bringing the case in his own name while asserting claims belonging to VRC and seeking relief for VRC.  A plaintiff must have standing to bring claims, and "must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731–32 (1st Cir. 2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 563 (1992)).  Macdonald has certainly alleged that VRC was harmed by the Superior Court's rulings and by the town's treatment of the property, but he has not shown that all of these actions separately injured him.

Macdonald does allege some injuries to himself, however. The writs of attachment and executions, for instance, both name Macdonald as well as VRC.  Macdonald thus may have standing to raise claims related to these writs in his own name.  But he does not have standing to raise claims that solely involve injuries to VRC.  The court need not, however, delve into precisely which claims Macdonald has standing to bring.  As explained below, the court finds that all the claims must be dismissed for other reasons.

**C.  Claims against the Chief Justice, presiding judge, and the Superior Court**

As explained below, Macdonald's claims against the individual judges must be dismissed because of the judicial

immunity and <u>Rooker-Feldman</u> doctrines.  Any derivative claims

against the Superior Court are barred for the same reasons.

Further, Macdonald's contract claim against the Superior Court

fails to state a claim on which relief can be granted.  Finally,

any damages claims against the Superior Court are barred by the

Eleventh Amendment.

### 1.   Judicial immunity

Judges have "absolute immunity from civil liability for any

normal and routine judicial act." Cok v. Cosentino, 876 F.2d 1,

2 (1st Cir. 1989) (citing Stump v. Sparkman, 435 U.S. 349, 356–

57 (1978)).  "This immunity applies even when the judge is

accused of acting maliciously and corruptly," because the proper

means for correcting errors is appeal.  Pierson v. Ray, 386 U.S.

547, 554 (1967).  A judge "should not have to fear that

unsatisfied litigants may hound him with litigation charging

malice or corruption.  Imposing such a burden on judges would

contribute not to principled and fearless decisionmaking but to

intimidation." Id.  "This immunity applies no matter how

erroneous the act may have been, how injurious its consequences,

how informal the proceeding, or how malicious the motive.  Only

judicial actions taken in the clear absence of all jurisdiction

will deprive a judge of absolute immunity." Cok, 876 F.2d at 2 (citations omitted).[40]

Macdonald has not alleged that the Chief Justice or the presiding judge acted in the absence of jurisdiction. New Hampshire law gives the Superior Court jurisdiction over zoning appeals and the power to issue writs of execution. See RSA 527:2; 677:4. The judges' decisions could be challenged by appeals through the New Hampshire courts and to the United States Supreme Court, but the judges are not subject to liability in this court for actions within their judicial jurisdiction. All of Macdonald's claims against the Chief Justice and the presiding judge, and those claims against the Strafford County Superior Court based upon the judges' actions, must therefore be dismissed.

### 2. Rooker-Feldman doctrine

Most, if not all, of Macdonald's claims against the judicial defendants also implicate the Rooker-Feldman doctrine. As the First Circuit Court of Appeals recently explained, "[t]he Rooker-Feldman doctrine preserves the Supreme Court's exclusive jurisdiction over appeals from final state-court judgments, by

---

[40] Injunctive relief against judges under Section 1983 is also extremely limited. 42 U.S.C. § 1983 (only available if "a declaratory decree was violated or declaratory relief was unavailable"). There is no suggestion that the exceptions apply here.

divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court. Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64 (1st Cir. 2018)(citations omitted). "Specifically, the doctrine applies to 'cases brought by state-court losers complaining of injuries caused by state-court judgments [that were] rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments." Id. at 65 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

Macdonald asks this court to reconsider various Superior Court findings and to award VRC damages based upon the Superior Court proceedings. These are clearly injuries allegedly "caused by state-court judgments." Most of the relevant Superior Court judgments, including those most directly addressed by the complaint, occurred and became final before proceedings in this court commenced.

Again, the proper route for Macdonald and VRC to challenge the decisions of the Superior Court was appeal to the New Hampshire Supreme Court and, if necessary, to the United States Supreme Court. This court lacks jurisdiction to consider alleged injuries caused by completed state court proceedings. [41]

_____

[41] Even apart from judicial immunity, Macdonald's allegations that the judicial defendants conspired against him are

### 3. Contract claim

Macdonald claims that the Superior Court should be made to pay $20 million to VRC because it "knew of and violated the contract presented in this case from the beginning of the consequences if the [town] took this case to court.  The [town] signed this contract by default and it should be honored."[42] Macdonald has not presented any contract to the court or clearly described the alleged terms.  He appears to be claiming that, at some stage of this dispute, he told the town that they would owe him $20 million if they did not acquiesce to his position.  The Superior Court rejected a similar "default contract" argument.[43] A mere demand is not a contract, and so Macdonald has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P 12(b)(6).  Moreover, any claim for damages against the Superior Court, whether contractual, under the ADA, or any other theory, is barred by the Eleventh Amendment.  See Stegeman v. Georgia, 290 Fed. Appx. 320, 322 (11th Cir. 2008) ("actions against state courts are barred by the Eleventh Amendment").

---

conclusory and speculative, and he thus fails to state claims for relief on those allegations.

[42] Compl. (doc. no. 1) at 5.

[43] Superior Ct. Order on Post-Hearing Briefing and the Town's Motion to Dismiss Damage Claim of June 8, 2017 (doc. no. 4-7).

**D.  Claims against the Town of Lee, NH**

Most of Macdonald's claims against the town seek to reopen issues decided by the Superior Court.  As explained below, these claims are barred by the Rooker-Feldman and res judicata doctrines.  In addition, Macdonald fails to state a cognizable claim under the ADA or a contract claim upon which relief can be granted.

**1.  Rooker-Feldman doctrine**

The town argues that Macdonald's claims against it are barred by the Rooker-Feldman doctrine.  This is true only of those claims where the injury alleged depends on the outcome of the state court proceedings.  The doctrine does not "override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions," applying only where the plaintiff is "complaining of an injury caused by the state-court judgment." Exxon Mobil, 544 U.S. at 284, 291.

Thus, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293 (quotation omitted).  To the extent that Macdonald premises any of his claims against the town on an injury caused by a Superior Court

ruling, the court dismisses those claims for lack of jurisdiction.  But many of his claims, although "attempts to litigate in federal court a matter previously litigated in state court," see id., are within the court's jurisdiction.  As explained below, however, these remaining claims are subject to preclusion.

### 2.  Res Judicata

"Under federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state in which it was rendered." Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011).  Under New Hampshire law, "[r]es judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action." Brooks v. Trs. of Dartmouth Coll., 161 N.H. 685, 690 (2011).  "For the doctrine to apply, three elements must be met:  (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the first action." Id. The town bears the burden of establishing that res judicata bars Macdonald's claims.  See Dillon, 630 F.3d at 80.

All three factors are met here.  The parties are the same,
as the Superior Court proceedings were between Macdonald, VRC,
and the town.[44]  The Superior Court's "Final Order" constitutes a
final judgment, and ruled on the merits of several of the causes
of action that Macdonald attempts to revive against the town
here.[45]  Macdonald's claims against the town for violation of
RLUIPA, the First Amendment, and the Fourteenth Amendment are
thus barred by res judicata.  So are claims alleging that the
town's Zoning Board misinterpreted the zoning ordinance,
disputing whether Macdonald and VRC violated the conditions of
the settlement agreement, or challenging the validity of the
sheriff's sale.  These issues were litigated to their final
conclusion by the same parties before the Superior Court.  The
remedy for any alleged error there is appeal, not a new lawsuit.

### 3.  ADA claim

Macdonald does not specify under which title of the ADA his
claim falls, and the town does not address how the claim should

---

[44] Given the confusion of Macdonald and VRC's interests in the
complaint, no distinction between their roles in the state
proceedings is relevant to the res judicata analysis.

[45] Superior Ct. Final Order of Nov. 13, 2017 (doc. no. 4-8).  The
Superior Court rejected an ADA claim against the town in its
March 4, 2016 order, but the present claim is arguably based at
least in part on subsequent town conduct, and so not barred by
res judicata.  See Superior Ct. Order of Mar. 4, 2016 (doc no.
4-3) at 5-6.

be classified.  But the zoning decisions of a city can be
activities subject to challenge under Title II.  Trovato v. City
of Manchester, N.H., 992 F. Supp. 493, 498-99 (D.N.H. 1997)
(McAuliffe, J.).[46]  The court therefore addresses Macdonald's
challenge to the town's zoning decisions under that Title.

To prevail on a claim under Title II, a plaintiff must
prove:

> (1) that he is a qualified individual with a
> disability; (2) that he was either excluded from
> participation in or denied the benefits of some public
> entity's services, programs, or activities or was
> otherwise discriminated against; and (3) that such
> exclusion, denial of benefits, or discrimination was
> by reason of the plaintiff's disability.

Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006).  Even
assuming that Macdonald has met the first requirement, he has
not sufficiently alleged the second and third elements.  He
alleges that the town sought to exclude homeless veterans
because of misconceptions about veterans and substance abuse.[47]
But these allegations are conclusory and speculative.  Macdonald
has not, for example, alleged that other landowners or churches
have been allowed to build lodging structures absent proper
permitting, or that the town has defined "church" in the zoning

---

[46] The Superior Court analyzed Macdonald's previous ADA claim
under Title II.  See supra n.42; Superior Ct. Order of Mar. 4,
2016 (doc no. 4-3) at 5.

[47] Compl. (doc. no. 1) at 6.

ordinance more broadly in other cases.  For animus, he makes only a bare and unsupported allegation that certain selectmen made derogatory comments about veterans.  Macdonald thus fails to set out factual allegations sufficient to allege discrimination "by reason of" his disability.  Even reading the complaint generously in light of Macdonald's pro se status, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), he has failed to state a cognizable ADA claim.

### 4.  Contract claim

Macdonald claims that the town owes VRC $20 million.  As discussed supra Part III.D.3, Macdonald does not sufficiently allege the existence of any contract.  Accordingly, Macdonald has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## IV.  Conclusion

Macdonald seeks to reverse decisions rendered by the Strafford County Superior Court.  For the reasons discussed, the proper route to challenge those decisions was appeal, and this court is barred from reopening the issues already decided.  The defendants' motions to dismiss are GRANTED.[48]

---

[48] Document nos. 3, 4.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    March 27, 2019

cc:  Peter Macdonald, pro se
     Nancy J. Smith, Esq.
     Corey M. Belobrow, Esq.